```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF NEW YORK
 2

 3   ----------------------------------X
                                       :
 4   JONATHAN McCHRISTON,              :
                                       : 18-CV-00185 (VEC)
 5              Plaintiff.             :
                                       :
 6          v.                         : April 27, 2018
                                       :
 7   DIVERSIFIED CONSULTANTS,          : 500 Pearl Street
                                       : New York, New York
 8              Defendants,            :
     ----------------------------------X
 9
             TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
10            BEFORE THE HONORABLE BARBARA C. MOSES
                 UNITED STATES MAGISTRATE JUDGE
11

12   APPEARANCES:

13   For the Plaintiff:       JONATHAN McCHRISTON, pro se
                              127 Edgecombe Avenue, Apt. 4B
14                            New York, New York 10030

15   For the Defendant:       AARON R. EASLEY, ESQ.
                              Sessions, Fishman Nathan & Israel PC
16                            3 Cross Creek Drive
                              Flemington, New Jersey 08822
17

18
     Court Transcriber:       MARY GRECO
19                            TypeWrite Word Processing Service
                              211 N. Milton Road
20                            Saratoga Springs, New York 12866

21

22

23

24

25



     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
```

                                                                    2

1        THE CLERK:  Jonathan McChriston v. Diversified
2   Consultants.  Counsel and parties state your name for the
3   record.
4        THE COURT:  Plaintiff first.
5        MR. McCHRISTON:  Jonathan McChriston.
6        THE COURT:  Welcome, Mr. McChriston.  Did you have
7   difficulty finding the courthouse or did you have difficulty
8   getting through security?
9        MR. McCHRISTON:  Both.
10       THE COURT:  Okay.  As I tried to warn you in my
11  initial order scheduling this conference, I know the
12  conference got adjourned a few times, but in my initial order
13  scheduling the conference I warned you to get here in advance
14  because it can take some time to get through our security line
15  downstairs.  So in the future, you need to add some additional
16  time into your planned schedule.  All right?
17       MR. McCHRISTON:  Okay.
18       THE COURT:  Okay.
19       MR. EASLEY:  May it please the Court, Your Honor,
20  Aaron Easley for defendant Diversified Consultants
21  Incorporated.
22       THE COURT:  All right, Mr. Easley.  So this is a
23  preliminary scheduling conference.  I am Magistrate Judge
24  Moses.  As you know, all of the scheduling and discovery and
25  other pretrial matters in this case have been referred to me

1  by the district judge, Judge Caproni.  She's also referred the
2  matter to me for report and recommendation on any dispositive
3  motions.  What that means in a nutshell is until and unless
4  the case is ready for trial I will be the judge that you will
5  be seeing.
6        I see that there is a complaint and an answer on
7  file.  Let me begin, Mr. McChriston, by just asking you,
8  because the complaint is a little on the dry side, tell me in
9  your own words what you're complaining about and why.
10        MR. McCHRISTON:  I'm complaining about why they
11 pulled the credit report two times.
12        THE COURT:  All right.  And you know this because
13 you asked for a copy of your TransUnion report and you sword
14 that it had happened, correct?
15        MR. McCHRISTON:  Yes.
16        THE COURT:  You would not have known otherwise?
17        MR. McCHRISTON:  No.
18        THE COURT:  Did you make any effort to find out
19 before you filed this lawsuit what happened?
20        MR. McCHRISTON:  I looked into it but I didn't get a
21 clear answer.
22        THE COURT:  How did you look into it?
23        MR. McCHRISTON:  We looked at the credit report, you
24 know, just to see what was going on, like why --
25        THE COURT:  Did you call Diversified?

                                                                    4

1            MR. McCHRISTON:  I talked to a lawyer there I
2    believe, yeah.
3            THE COURT:  And what happened?  What did they tell
4    you?
5            MR. McCHRISTON:  That it wasn't a big thing, this
6    and that.  It wasn't a big problem.
7            THE COURT:  Do they give you any reason why your
8    credit information had been accessed?
9            MR. McCHRISTON:  No.  I didn't get a clear answer on
10   that.
11           THE COURT:  All right. Did you take notes from that
12   call?
13           MR. McCHRISTON:  A little bit.
14           THE COURT:  You kept those notes, right?
15           MR. McCHRISTON:  Yes.
16           THE COURT:  You understand that now that you're in a
17   lawsuit you can't throw away any documents that might be
18   relevant?
19           MR. McCHRISTON:  Okay.
20           THE COURT:  All right?  Now, who is Convergent
21   Outsourcing?  Because I see in your complaint in -- it's right
22   on the Count 1 you say violation of the Fair Credit Reporting
23   Act and then you give the statutory citation, willful
24   noncompliance by defendant Convergent Outsourcing.  Who's
25   that?

5

1  MR. McCHRISTON: Somebody who -- that's in number
2  one?
3  THE COURT: Yes. It's on the second page of your
4  complaint. Do you see where it says Count 1? Do you have
5  your complaint with you, Mr. McChriston?
6  MR. McCHRISTON: Yeah, I do.
7  THE COURT: Okay. Page 2.
8  MR. McCHRISTON: Right.
9  THE COURT: Do you see Paragraph 10?
10 MR. McCHRISTON: I see Count 1. Okay.
11 THE COURT: Okay. Do you see where it says all in
12 capital letters defendant Convergent Outsourcing?
13 MR. McCHRISTON: Right.
14 THE COURT: Who's that?
15 MR. McCHRISTON: I believe that's some credit bureau
16 or something who must be a creditor.
17 THE COURT: Well, are you suing Convergent
18 Outsourcing?
19 MR. McCHRISTON: It's Diversified Consultants,
20 right? That's who.
21 THE COURT: You tell me. It's your lawsuit. Who
22 are you suing?
23 MR. McCHRISTON: Diversified Consultants, right.
24 THE COURT: Okay. So you're suing Diversified
25 Consultants. Who is defendant Convergent Outsourcing? Was

                                                                    6

1  that a mistake on your part?
2              MR. McCHRISTON:  They're the ones, yeah.
3              THE COURT:  What do you mean they're the ones?
4              MR. McCHRISTON:  They pulled my credit report.
5              THE COURT:  Well, that's not who you're suing here.
6              MR. McCHRISTON:  Right.  Diversified Consultants is
7  the one.
8              THE COURT:  As you told me a moment ago, you're
9  suing a defendant called Diversified Consultants.  That
10 defendant, Diversified Consultants, has filed an answer.  This
11 lawyer, Mr. Easley, represents Diversified Consultants.  I'm
12 just trying to figure out who these other guys are.  Sometimes
13 people who file more than one lawsuit make mistakes in their
14 pleading.  Is that possibly what happened here?
15             MR. McCHRISTON:  It's possible.
16             THE COURT:  Have you sued somebody called Convergent
17 Outsourcing in some other lawsuit?  And just so there are no
18 surprises, if you look at the very last page of your complaint
19 where you demand damages it says you demand judgment for
20 damages against defendant Convergent Outsourcing for statutory
21 damages of $2,000, punitive damages to be determined by this
22 Honorable Court, attorneys fees and costs pursuant to 15 USC
23 Section 1681(n).
24             MR. EASLEY:  Right.  Yes.
25             THE COURT:  Do you know who you're suing?

1          MR. EASLEY:  Yes, I do.
2          THE COURT:  Who are you suing?
3          MR. McCHRISTON:  I'm suing Diversified Consultants.
4          THE COURT:  Uh-huh.
5          MR. McCHRISTON:  Right.  And the defendant is
6  Convergent Outsourcing.
7          THE COURT:  Well, if you say you're suing a certain
8  company then that is the defendant.  That's what it means to
9  be a defendant.  That's the person or the company that you're
10 suing.
11         MR. McCHRISTON:  Okay.
12         THE COURT:  What company allegedly accessed your
13 credit report on the dates that you give in your complaint?
14         MR. McCHRISTON:  Diversified Consultants.
15         THE COURT:  Okay.  Do you know who Convergent
16 Outsourcing is?  Do you have any idea what that company is or
17 what it's doing in this case?  Mr. McChriston, did somebody
18 help you write your complaint?
19         MR. McCHRISTON:  I had legal -- yes, I did have --
20         THE COURT:  Somebody helped you?
21         MR. McCHRISTON:  Yeah, I had legal -- I went to a
22 legal lawyer and they helped me, you know, walk through it.
23         THE COURT:  Okay.  Have you filed more than one
24 credit complaint in this court or in other courts?
25         MR. McCHRISTON:  I have, right.

8

1           THE COURT:  Okay.  Have you sued Convergent
2  Outsourcing in one of your other lawsuits?
3           MR. McCHRISTON:  Yes, yes, yes.
4           THE COURT:  Did you make a mistake in this complaint
5  and forget to change the name?
6           MR. McCHRISTON:  It's possible.
7           THE COURT:  Okay.  Were you harmed in any way by
8  Diversified Consultant accessing your credit information that
9  you can describe in any way other than presumably not wanting
10 that to happen?
11          MR. McCHRISTON:  It seemed like it lowered my credit
12 score.
13          THE COURT:  Okay.
14          MR. McCHRISTON:  Right.
15          THE COURT:  And what makes you say that?
16          MR. McCHRISTON:  Because when I went to apply for a
17 credit card at a store they told me that I couldn't -- I
18 didn't have enough points or something.
19          THE COURT:  When did you go to apply for the credit
20 card at the store?
21          MR. McCHRISTON:  Months ago.  That was a while ago.
22 Months ago.
23          THE COURT:  Sometime in 2017?
24          MR. McCHRISTON:  In 2017, yes, definitely.
25          THE COURT:  All right.  You allege that Diversified

1  Consultants obtain your TransUnion consumer credit report back
2  in 2014 and again in June of 2016.  Are you saying that your
3  credit score when you went to open a store account in 2017 was
4  lowered because of those two incidents?
5              MR. McCHRISTON:  That's what I believe, yes.
6              THE COURT:  Was there anything else on your credit
7  report from 2014 through 2017?
8              MR. McCHRISTON:  Not that I can recall.
9              THE COURT:  All right.  And do you have -- you
10 looked at the entire credit report, correct?
11             MR. McCHRISTON:  I did.
12             THE COURT:  Not just the Diversified Consultant
13 aspect of it?
14             MR. McCHRISTON:  Yes.
15             THE COURT:  All right.  And other than the fact that
16 you saw the Diversified Consultant access in 2014 and 2016 and
17 the fact that the store charge card was denied in 2017, do you
18 have any other basis for believing that Diversified
19 Consultants had something to do with you being denied that
20 store credit card?
21             MR. McCHRISTON:  No.
22             THE COURT:  Okay.  Mr. Easley, what is this case
23 about from your perspective?
24             MR. EASLEY:  Judge, DCI, Diversified Consultants
25 Incorporated was retained to collect a Verizon debt.

```
                                                                 10
 1                THE COURT:  Could you just -- yes.  Thank you.
 2                MR. EASLEY:  Retained to collect a Verizon debt and
 3   a Time Warner Cable debt.  And under the Fair Credit Reporting
 4   Act, a debt collector is able to obtain a credit report and
 5   furnish information.  That's what's called a permissible
 6   purpose.
 7                THE COURT:  Right.
 8                MR. EASLEY:  And Mr. McChriston has complained that
 9   they accessed his credit report as part of the collection
10   process.  And there's a litany of case law that says what was
11   done was proper.  So after we go through the discovery we're
12   going to file a motion for summary judgment and seek to
13   dismiss the action.
14                Now Your Honor, you had also asked Mr. McChriston if
15   he had any other lawsuits.  We checked Pacer.  There's no
16   lawsuit against Convergent.  So that was clearly a
17   typographical error.  But there is a lawsuit that Mr.
18   McChriston has against another debt collector named Debt
19   Recovery Solutions.  So when you asked Mr. McChriston if he
20   checked his credit report and if there are other demerits on
21   there besides the ones that result from his Verizon debt and
22   his Time Warner debt, he clearly was in collection with
23   respect to at least one other account.  So ultimately, Your
24   Honor, our position is that there was a permissible purpose
25   under the Fair Credit Reporting Act and that there is no
```

```
                                                                   11
 1  violation here.
 2              THE COURT:  Okay.  Anything you want to add, Mr.
 3  McChriston?  Let me ask the question this way --
 4              MR. McCHRISTON:  But they pulled the credit report
 5  more than one time though.
 6              THE COURT:  Well, Mr. Easley just stated that they
 7  did so pursuant to two separate debts of yours that they were
 8  attempting to collect, one on behalf of Verizon and one on
 9  behalf of Time Warner did you say?
10              MR. EASLEY:  Time Warner, Your Honor.
11              THE COURT:  One on behalf of Time Warner.  Did you
12  have accounts with Verizon and Time Warner?
13              MR. McCHRISTON:  I did.
14              THE COURT:  And did those accounts get behind?
15              MR. McCHRISTON:  I believe -- I don't have the
16  records in front of me.
17              THE COURT:  Right.  And did a debt collector work on
18  those accounts?
19              MR. McCHRISTON:  I don't recall because I thought I
20  settled the Time Warner.
21              THE COURT:  Directly with Time Warner or with a
22  collector on Time Warner's behalf?
23              MR. McCHRISTON:  I believe it was with Time Warner
24  but it's been some time so I can't say exactly.
25              THE COURT:  Okay.  So I should just, Mr. McChriston,
```

12

1   I have not seen any evidence so I'm not in a position to
2   confirm that what Mr. Easley says is true is true.  But if he
3   does come forward with the evidence and if it should turn out
4   to be the case that Diversified Consultants was acting in a
5   lawful capacity as a debt collector on behalf of Verizon in
6   one instance and on behalf of Time Warner on the other
7   instance and that's the reason that they accessed your
8   account, that would be a permissible purpose under the
9   relevant federal statute and you will lose this lawsuit if
10  those prove to be the facts.  And I don't know what Mr.
11  Easley's plan is with regard to seeking a judgment of costs or
12  even attorneys fees against you in the event that that should
13  occur, but those motions can be made.  I want you to be aware
14  of that.  Have you and Mr. Easley had an opportunity to talk
15  about whether there's a way to resolve this lawsuit short of
16  going through discovery and motion practice?
17            MR. McCHRISTON:  No.
18            THE COURT:  All right.  So after we set a schedule
19  today I will direct the two of you to have a conference and
20  discuss whether there is a way to dispose of this lawsuit
21  without further Court involvement.  That of course is not
22  something I can direct.  I can direct you to talk to each
23  other.  If you reach an accommodation, that will be an
24  agreement made between the parties.
25            In the meantime, Mr. Easley, his client has answered

1 the complaint which means that we are ready to move into the
2 discovery phase unless there is a request from either side to
3 add additional parties or to amend their pleading.  Now, Mr.
4 McChriston, if you named this entity Convergent Outsourcing by
5 mistake, I can deem your complaint amended so that it says
6 Diversified Consultants and it doesn't say Convergent
7 Outsourcing.  Would you like me to do that and save you the
8 trouble?  All right.  So I --
9             MR. McCHRISTON:  Or you're saying I could do it
10 myself you're saying?
11            THE COURT:  No, I'm offering to -- this was a
12 mistake, right?
13            MR. McCHRISTON:  Okay.  Yes.
14            THE COURT:  You meant to sue Diversified.  You did
15 not mean to call the defendant Convergent Outsourcing.
16 Correct?
17            MR. McCHRISTON:  Right.
18            THE COURT:  All right.  I will deem the complaint
19 amended so that all references to the defendant are to
20 defendant Diversified Consultants.  Would you like to make any
21 other changes to your pleading?  All right.  Mr. Easley, any
22 new parties or amendments?
23            MR. EASLEY:  No, Your Honor.
24            THE COURT:  Very well.  Neither party shall amend
25 their pleadings or add new parties absent leave of the Court

                                                                14

1    which must be requested under the Federal Rules of Civil
2    Procedure.  Mr. Easley, you're not making a Rule 12 motion,
3    correct?
4              MR. EASLEY:  Not at this time, Your Honor.
5              THE COURT:  All right.  So discovery.  Have you been
6    to the discovery process in the past, Mr. McChriston?
7              MR. McCHRISTON:  Yes.
8              THE COURT:  All right.  Do you wish to serve any
9    documents or interrogatories on the defendant?
10             MR. McCHRISTON:  No.
11             THE COURT:  All right.  Mr. Easley, does the
12   defendant wish to serve written discovery requests?
13             MR. EASLEY:  Yes, Your Honor.  We'll serve
14   interrogatories, document requests, and requests for
15   admissions and then we'll seek to take a deposition.
16             THE COURT:  All right.  So let me look at my
17   calendar.  Today is April the 27th.  Can you get your discovery
18   served in two weeks, that is by May the 11th?
19             MR. EASLEY:  I can, Your Honor.
20             THE COURT:  All right.  Any requests for written
21   discovery, that means document demands, interrogatories, or
22   requests for admission must be served by May 11, 2018.  That's
23   two weeks from today.  Do you know how to serve discovery
24   requests, Mr. McChriston?  Very well.  They must be responded
25   to 30 days thereafter.  So if you serve them sooner than May

15

1   11, the responses will be due -- well, whatever day you serve
2   them, the responses will be due 30 days later.  So let's
3   assume that those responses come in 30 days after May 11th
4   which brings us to Monday, June the 11th.  How many
5   depositions, Mr. Easley?
6           MR. EASLEY:  Just one, Your Honor.
7           THE COURT:  Do you wish to take any depositions, Mr.
8   McChriston?
9           MR. McCHRISTON:  Not at this moment.
10          THE COURT:  All right.  So let me give you 30 days
11  to get that accomplished, Mr. Easley.  I'm building in time
12  for possible meeting and conferring on insufficiency of
13  document responses and this does not preclude you from seeking
14  an extension if you need one.
15          MR. EASLEY:  Thank you for that last part, Your
16  Honor, because I will be on vacation the first -- around the
17  4th of July.
18          THE COURT:  All right.  So let's make it then
19  Friday, July 20.  Friday, July 20 will be the deadline to
20  complete any remaining fact discovery including back
21  depositions.  Does either party contemplate any expert
22  evidence?  Mr. McChriston?
23          MR. McCHRISTON:  No.  I'm just going to confer with
24  my legal --
25          THE COURT:  Mr. Easley?

16

1         MR. EASLEY:  No, Your Honor.
2         THE COURT:  Very well.  The discovery close date
3  will be July the 20th.  As both of you know I hope,
4  applications can be made to this Court to change the schedule
5  if you need a change in the schedule.  However, don't wait
6  until the last minute to ask.  If you think you are going to
7  need an extension or some other modification to the discovery
8  schedule, you must first consult with each other, see if you
9  can come to some agreement.  And then you must make a written
10 request to the Court.  And in your written request to the
11 Court you must explain what the problem is that causes you to
12 need an extension and you must tell me whether the other side
13 agrees or not.
14        Mr. Easley, since you are the only lawyer in the
15 case, I will ask you to submit a status letter a week prior to
16 the discovery close.  I will ask that status letter to be
17 submitted via ECF no later than July 13th.  And you should
18 update me on the progress of discovery.  Let me know if there
19 are any disputes either active or incipient that are likely to
20 require judicial intervention.  And also please tell me at
21 that point whether a Court facilitated discovery -- excuse me,
22 a Court facilitated settlement conference is requested by
23 either party.  You'll have to speak to the plaintiff before
24 you submit the status report so that he can give his views as
25 well as the defendant's views.  Any motion for summary

17

1  judgment will be due 30 days after the close of discovery.  So
2  at present with the discovery close set for July the 20th, that
3  would make summary judgment motions due on Monday, August the
4  20th.  But if the close of fact discovery moves, the summary
5  judgment date will move with it.  If there are no summary
6  judgment motions, and summary judgment motions come to me
7  pursuant to my individual practices, if there are no summary
8  judgment motions then the parties' joint pretrial order,
9  proposed joint pretrial order, is due on the same date.  That
10 goes to the district judge and must be prepared in accordance
11 with the district judge's individual practices.  Anything
12 further, Mr. McChriston?
13         MR. McCHRISTON:  No.
14         THE COURT:  Anything further, Mr. Easley?  We will
15 kick out a written order with these dates in it.
16         MR. EASLEY:  It's been hard to get in touch with Mr.
17 McChriston, so if the Court could solicit --
18         THE COURT:  Well, Mr. McChriston, have you submitted
19 a --
20         MR. EASLEY:  -- a way for Mr. McChriston to
21 communicate --
22         THE COURT:  Sorry.  I'm anticipating where you're
23 going on that.
24         MR. EASLEY:  Yeah.
25         THE COURT:  Mr. McChriston, do you have email?

18

1   MR. McCHRISTON:  Yes, I do.
2   THE COURT:  Could you give Mr. Easley your email
3 address, please?  I'm also going to direct you when you leave
4 court today to go downstairs to the second floor to the pro se
5 office.  Do you know where that is?
6   MR. McCHRISTON:  Yes.
7   THE COURT:  All right. And ask them for an updated
8 contact information form which you will fill out including
9 your email address and give to the pro se office so that the
10 Court has that information as well if we need to get a hold of
11 you and you're not answering your phone so that we can send
12 you an email as well.  So first give it directly to Mr. Easley
13 and then go downstairs and fill out that pro se contact form,
14 please.  Give it back to the folks at the pro se office and
15 they'll file it on the docket for us.  But before you do that,
16 I want the two of you to have a conversation with each other
17 about where you think this case is going.  You should feel
18 free to use my jury room if you want for that conversation.
19 It's through that door under the clock.  All right.  Anything
20 further?
21   MR. EASLEY:  No.  Thank you, Judge.
22   THE COURT:  All right. We're adjourned.  Thank you.
23                        * * * * * *
24
25

19

I certify that the foregoing is a court transcript from an electronic sound recording of the proceedings in the above-entitled matter.

*Mary Greco*

Mary Greco

Dated:  June 3, 2019